**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Misc. Action No. 1:26-mc-00158-NYW-TPO

In Re Application of

UNION DES ASSOCIATIONS EUROPÉENNES DE FOOTBALL ("UEFA"),

To Obtain Discovery for Use in a Foreign Proceeding

---

**NONPARTIES GREGORY B. MAFFEI AND BANN VENTURES' NON-OPPOSITION TO MOTION TO INTERVENE AND MOTION TO DEFER RULING AND FOR A COORDINATED BRIEFING SCHEDULE**

---

Nonparties Gregory B. Maffei and BANN Ventures, Inc. ("BANN") (collectively "Nonparties"), by and through undersigned counsel, respectfully provide notice to this Court of their non-opposition to FIFA (AMERICAS), Inc. and FWC2026 US, Inc.'s (collectively "FIFA U.S.") Motion To Intervene in this matter. Nonparties also request that this Court defer ruling on UEFA's application for an order under 28 U.S.C. § 1782 ("Application"), in which UEFA seeks broad written and oral discovery from the Nonparties, pending adjudication of a nearly-identical application against FIFA U.S. being briefed in the Southern District of Florida, or in the alternative, move for a coordinated briefing schedule that will allow the Nonparties and interested parties to fully brief the matter before the Court rules on the Application.

## I. STATEMENT OF CONFERRAL

On September 16, 2026, undersigned counsel sent an email to UEFA's counsel requesting to confer pursuant to D.C.Colo.LCivR 7.1 regarding this motion and outlined

the relief sought herein. On September 17, 2026, undersigned counsel met with UEFA's counsel to confer. UEFA opposes this motion and the relief requested herein.

## II. INTRODUCTION

In this case, UEFA asks this Court to authorize four subpoenas imposing extremely broad document and deposition discovery on two Colorado nonparties—BANN and Mr. Maffei—purportedly for use in a Swiss criminal matter that does not appear to actually exist.[1] UEFA identifies no open Swiss criminal case, no pending Swiss investigation, no prosecutor's request, no investigating authority, and no decision by a Swiss authority to pursue the flimsy allegations on which UEFA rests its Application. Instead, UEFA plays up the possibility of "contemplated" criminal charges in Switzerland and claims that Swiss authorities may at some future unknown time open an investigation. This speculative sequence does not justify immediate federal compulsory process against nonparties.

It is clear from its face that UEFA's novel hypothetical only serves as a vehicle to make discovery requests that are not supported by § 1782 in its pursuit of an *ex-parte* order from this Court. In so doing, UEFA seeks the Court's blessing to avoid the usual requirement of opening an actual civil case before obtaining discovery, and to circumvent the apparent binding arbitration provision governing the underlying dispute

---

[1] UEFA has filed substantially similar § 1782 applications in the Southern District of Florida and the Southern District of New York. *See In re Ex Parte Application of Union des Associations Européennes de Football ("UEFA"),* No. 1:26-mc-25872-JEM (S.D. Fla. filed August 27, 2026); *In re Ex Parte Application of Union des Associations Européennes de Football ("UEFA"),* No. 1:26-mc-00431-JAV (S.D.N.Y. filed August 28, 2026).

between UEFA and Fédération Internationale de Football Association ("FIFA"), an association of national football associations organized under Swiss law, headquartered in Zurich, Switzerland. UEFA also seeks to smear its adversaries, as well as innocent nonparties like Mr. Maffei and BANN that UEFA inaccurately brands as "co-conspirators" based on, at most, their limited to non-existent role in this situation.

In its Application, UEFA alleges that BANN and Mr. Maffei advised on the commercial aspects of a proposed FIFA Forward Enterprise ("FFE") transaction that never came to fruition. The proposal was publicly announced, met immediate opposition, and, by UEFA's own account, "collapsed within days" and was abandoned. ECF No. 1-2 at 8-9. Importantly, UEFA does *not* allege that BANN or Mr. Maffei are the subjects or targets of any purported existing Swiss criminal case or investigation. Nor does it identify a Swiss prosecutor or tribunal that has requested evidence from them. Yet, UEFA asks this Court to authorize sweeping document demands, an individual deposition, and a Rule 30(b)(6) deposition of BANN based on a dreamt-up future criminal proceeding that UEFA cannot itself commence, control, or prosecute.

This unusual procedural posture requires more scrutiny before compulsory discovery issues. Section 1782 authorizes assistance *only* for use in a proceeding in a foreign or international tribunal, including an actual criminal investigation conducted before formal accusation. 28 U.S.C. § 1782(a). It does not permit a private entity to use American discovery tools to investigate whether it might someday persuade foreign authorities to open a criminal matter. And even where statutory requirements are satisfied, § 1782 leaves the requested relief up to a court's discretion.

As a threshold matter, the Nonparties do not oppose FIFA U.S.'s request to intervene in this matter pursuant to Fed. R. Civ. P. 24 and take the position that intervention is appropriate and required for all of the reasons FIFA U.S. has articulated in its Motion To Intervene. *See* ECF No. 15. Also, and as requested by FIFA U.S., the Nonparties move this Court to defer ruling on the Application until UEFA's substantially identical application in the Southern District of Florida is resolved. *See In re Ex Parte Application of Union des Associations Européennes de Football ("UEFA"),* No. 1:26-mc-25872-JEM (S.D. Fla. filed August 27, 2026), ECF No. 20, (Aug. 31, 2026 Order granting FIFA U.S.'s leave to file a response in opposition to UEFA's § 1782 application in Florida) and ECF No. 26, (Sept. 9, 2026 Order allowing UEFA to file a reply brief but declining to require the respondents to "prematurely assert objections to subpoenas that have not been (and may never be) served").

Finally, if a resolution of the Florida application is not dispositive of the Application in this District, the Nonparties seek a short, defined, and efficient opportunity to brief the issues in this case before the Court decides whether to authorize the subpoenas in Colorado. That request will neither prejudice UEFA nor meaningfully delay this miscellaneous proceeding, because UEFA identifies no imminent Swiss filing, prosecutorial deadline, evidentiary deadline, or risk of spoliation. To the contrary, UEFA represents that it sent preservation notices to BANN, Mr. Maffei, and other entities. ECF No. 1-2 at 9. Therefore, a short briefing schedule will give the Court the benefit of a developed record, avoid unnecessary subpoena and Rule 45 litigation, and permit

coordinated consideration of substantially overlapping applications that are now pending in Florida and New York.

## III. RELEVANT BACKGROUND

1. On August 27, 2026, UEFA filed its Application in this District. ECF No. 1. UEFA seeks authorization under 28 U.S.C. § 1782 to serve four subpoenas: two document-only subpoenas to Mr. Maffei and BANN, respectively, and two subpoenas for deposition testimony to Mr. Maffei and a corporate representative of BANN pursuant to Fed. R. Civ. P. 30(b)(6).

2. UEFA represents that it seeks the information and documents "for use in a contemplated criminal proceeding to be brought against" FIFA's president, Gianni Infantino. ECF No. 1-2 at 7.

3. BANN and Mr. Maffei are Colorado citizens and have no clear or direct connection to Switzerland, other than the mere allegation that Mr. Maffei provided some consulting services related to FIFA's potential FFE venture.

4. Despite the salacious and baseless description of Mr. Maffei as a "co-conspirator," the Application does not describe a criminal conspiracy at all. At most, the Application is a launching pad for UEFA's past governance grievances against FIFA and Infantino's leadership. The latest complaint from UEFA revolves around the FFE proposal, which Infantino and others allegedly explored without involving UEFA and others.

5. By the Application's own description, the "conspiracy" died on the vine: "The plan collapsed within days" of the announcement. "[O]n July 28, 2026, . . .

Infantino . . . publicly announced a plan to place the commercial rights to the men's and women's World Cups and the Club World Cup into a new subsidiary: [FFE] . . . [b]y August 1, 2026, Infantino conceded the transaction as proposed would not proceed*.*" *Id.* at 7-9.

6. To the extent any live controversy remains, it is between FIFA and UEFA, and not the Nonparties. Based on the claims in the Application, Mr. Maffei and BANN's involvement was limited to advising on the commercial aspect of the FFE proposal. That proposal has now been "abandoned" and, based on the description of the "near-universal revolt" against the FFE, *id.* at 8, there is no prospect of its resurrection.

7. As a purported basis for this unusual *ex-parte* request, UEFA sketches out a fuzzy outline of a "contemplated criminal proceedings" in Switzerland. Apparently, "UEFA and other interested parties are preparing to bring criminal claims in Switzerland against Infantino and possibly other FIFA officials and advisors for criminal mismanagement under Article 158 of the Swiss Criminal Code and such further or alternative charges as the developed factual record may support, arising out of the secretive structuring, valuation, financing, and marketing of a transaction that inflicted direct and concrete injury on FIFA's reputation, governance authority, and commercial relationships to the detriment of FIFA as well as its 211 members, including UEFA's 55 member associations." *Id.* at 9.

8. UEFA does not elaborate on how a non-governmental soccer organization can "bring" criminal charges, nor does it reveal the "other interested parties" who plan to play prosecutor alongside UEFA.

9. The Application does not allege any criminal charge against Mr. Maffei or BANN. Nor does the Application offer any factual allegations against the Nonparties that, if true, would amount to a cognizable violation of Swiss law. Nevertheless, UEFA urges this Court to grant its Application and issue subpoenas for broad categories of documents and depositions of both Mr. Maffei and BANN's corporate representative.

10. On September 1, 2026, FIFA U.S. filed its Motion To Intervene pursuant to Rule 24 of the Federal Rules of Civil Procedure. ECF No. 15. In its Motion, FIFA U.S. details UEFA's similar efforts to obtain records under § 1782 in the Southern District of New York and the Southern District of Florida. *Id.* at 1-3, 6.

11. As stated by FIFA U.S., the Southern District of Florida application was filed on August 27, 2026, the Florida court has granted it leave to oppose that application, and its opposition is due September 28, 2026. *Id.* at 2-3. Accordingly, FIFA U.S. has requested that this Court defer adjudication of the Application pending the near identical Florida application, or, in the alternative, grant it leave to submit its opposition in this District by September 30, 2026. *Id*. at 3, 16.

12. FIFA U.S. has taken a similar approach with respect to the § 1782 applications pending in the Southern District of New York. *See* Notice of FIFA (Americas) Inc. and FWC2026 US, Inc. Motion to Intervene, *In re Ex Parte Application of Union des Associations Européennes de Football ("UEFA"),* No. 1:26-mc-00431-JAV (S.D.N.Y. filed Sept. 1, 2026), ECF No. 14; *In re Ex Parte Application of Union des Associations Européennes de Football ("UEFA"),* No. 1:26-mc-00436-JAV (S.D.N.Y.).

## IV. LEGAL STANDARD

Section 1782(a) of Title 28 of the United States Code provides:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.
>
> A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

28 U.S.C. § 1782(a).

"The threshold statutory requirements of Section 1782(a) are met when: "'(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a tribunal, and (3) the application is made by a foreign or international tribunal or any interested person.'" *In re Perez Pallares*, No. 10-CV-02528-PAB, 2010 WL 4193072, at *1 (D. Colo. Oct. 20, 2010) (quoting *Schmitz v. Bernstein Liebhard & Lifshitz, LLP.*, 376 F.3d 79, 83 (2d Cir. 2004)). However, "[m]eeting the statutory requirements is necessary but not sufficient for the granting of such an

application." *In re Application of Thomas Read Mattson*, No. 21-MC-0046-WJM-NYW, 2021 WL 1698929, at *2 (D. Colo. Apr. 29, 2021). Thus, "even if the statutory requirements are satisfied, the Court retains discretion over whether to permit the requested discovery." *In re Request for Int'l Jud. Assistance from the Norrkoping Dist. Ct., Sweden*, 219 F. Supp. 3d 1061, 1062 (D. Colo. 2015).

The U.S. Supreme Court has provided a set of factors to consider in determining whether to grant a § 1782 request, including: (1) whether the documents or testimony sought are within the foreign tribunal's jurisdictional reach, and thus accessible absent § 1782; (2) the nature of the foreign tribunal and the character of the proceedings underway abroad; (3) the receptivity of the foreign government or the court or agency abroad to federal court assistance; (4) whether the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of the foreign country; and (5) whether the request contains unduly intrusive or burdensome requests. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-66 (2004).

## V. ARGUMENT

### A. There is No True Urgency to the Application That Would Justify Denying the Nonparties an Opportunity to be Heard.

UEFA identifies no concrete need for immediate, *ex-parte* subpoena authorization. Indeed, it was UEFA who made this a non-*ex-parte* public event. The entire premise of its Application is a "contemplated" Swiss criminal matter that, UEFA concedes, no Swiss authority has initiated or even endorsed the possibility of opening. UEFA identifies no existing prosecution, imminent pending investigation, request by a foreign criminal authority, or other ongoing proceeding that could conceivably justify

relief under § 1782. UEFA also does not identify any temporal sensitivities that would warrant an *ex-parte* request before the subjects of the discovery request can be heard, such as a looming statute-of-limitations deadline, the real prospect of spoliation, or an impending prosecutorial action in Switzerland. To the contrary, UEFA asserts that it served preservation notices on BANN, Mr. Maffei, and other entities, thereby reducing and eliminating the prospect of spoliation. ECF No. 1-2 at 9. If the resolution of the Florida application is not dispositive of the Application in this case, a coordinated briefing schedule allowing the Nonparties to brief the threshold § 1782 issues by a date certain is a modest measure that protects the Court, the parties, and the Nonparties from a premature and potentially unnecessary discovery order.

UEFA's argument, at bottom, is that it needs expansive discovery now to determine whether it can develop a viable criminal theory later. But § 1782 permits discovery for use in an existing or genuinely contemplated qualifying proceeding; it does not authorize a party to use federal compulsory process to create the factual predicate for one or to engage in a fishing expedition. Section 1782 is not a limitless license for a private entity to explore potential crimes, or non-existent crimes as is the case here. Nor is it a proper means to obtain *ex-parte* discovery to build a future civil or arbitration action.[2] The Application makes clear that there is no existing or imminent criminal investigation, and a daisy-chain of contingencies must occur before one will commence.

---

[2] It is certainly not intended as a launching pad for an aggrieved private actor to shoot off missives against rivals (and nonparties like Mr. Maffei and BANN) while overtly publicizing the pleadings in the media. *See* ECF No. 15 at 10 (describing UEFA leaking the application to the press to further its own agenda).

Therefore, without any serious urgency to UEFA's Application, there is ample time and good reason to allow the Nonparties an opportunity to fully brief this issue if necessary.

**B. The Nonparties Have Direct and Immediate Interests in This Proceeding.**

Mr. Maffei and BANN each have a real, direct, and immediate interest in the outcome of this Application. UEFA requests document production from each nonparty, an individual deposition of Mr. Maffei, and a Rule 30(b)(6) deposition of BANN's representative. The Court's order will determine whether those demands may issue in the first instance.

The Nonparties' direct exposure to broad discovery requests gives them a concrete interest in the Court's threshold § 1782 determination. If the discovery issues, BANN must evaluate collection and review obligations across its systems and custodian(s), including any burdens associated with ESI. Mr. Maffei, too, will be burdened in having to evaluate his documents and potential areas of deposition directed to him individually. Both Nonparties must evaluate confidential commercial information, potential privileges, objections, and protections, and the burdens imposed by the proposed categories and deposition topics. While Mr. Maffei and BANN will have an opportunity to litigate some of these concerns under Rule 45, the burden and adverse impact will be immediate and cannot be cured retroactively. The Court should exercise its discretion to give the Nonparties an opportunity to be heard before the discovery issues.

FIFA U.S.'s intervention motion ably underscores the point, yet FIFA U.S. is not a substitute for the Nonparties themselves. FIFA U.S., as set forth in its Motion To

Intervene, seeks to address interests associated with FIFA, the other applications, and apparent procedural and substantive defects in UEFA's Application. It separately acknowledges that BANN and Mr. Maffei have their own interests in their records, production obligations, and testimony. ECF No. 15 at 13-14. Those interests cannot be treated as adequately represented by UEFA, FIFA U.S., or any other entity.

### C. The Targets of the Discovery Requests Should be Heard Before the Court Rules On The Merits of the Application.

Although § 1782 applications are often filed on an *ex-parte* basis, there is nothing in § 1782 that requires the Court to rely only on a one-sided record, especially after the would-be discovery recipients have appeared and asked to be heard. The Court has authority to control its docket and to require an appropriate adversarial process before authorizing discovery that may never be warranted.

With the Court's permission, Mr. Maffei and BANN will address the statutory prerequisites and whether the *Intel* factors support UEFA's unusual request in the future if this Court agrees to hold that determination in abeyance pending the outcome of the Florida matter. Those considerations should be decided before the discovery issues, not on a Rule 45 litigation posture after the Court decides the threshold merits questions concerning § 1782.

### D. FIFA U.S.'s Motion Raises Serious Concerns that Should be Heard Before Authorizing Expansive Discovery.

FIFA U.S. has identified serious questions concerning whether UEFA has established a qualifying foreign proceeding, whether there is a valid theory for criminal charges under Swiss law, potential procedural and substantive defects in the

Application, and other considerations such as an arbitration provision and confidentiality concerns that should be addressed before the Court rules on the Application. *See* ECF No. 15 at 6-16. While the Nonparties share many of FIFA U.S.'s concerns, their interests are not identical, and the Court will benefit from full briefing by FIFA U.S. and the Nonparties.

### E. A Coordinated Briefing Schedule Will Avoid Inconsistent Rulings on Substantially Similar Requests in Florida and New York.

UEFA's pending § 1782 applications in Colorado, Florida, and New York arise from the same proposed FFE proposal, assert the same Swiss-law-based justification for the requests, and seek largely overlapping information. *See id.* at 2-3, 11-15 The Florida proceeding is already on a briefing schedule and that court will receive FIFA U.S.'s opposition by September 28, 2026. UEFA will have an opportunity to reply within seven days. While this Court is not bound by another district court's consideration of a related § 1782 application, a brief deferral period that permits this Court to consider a developed record of common issues will avoid inconsistent treatment of the applications. On the other hand, an immediate ruling by this Court before the Nonparties and FIFA U.S. are heard would create a substantial risk of duplication, inconsistent rulings, and unnecessary collateral Rule 45 motion practice.

At minimum, the Court should set a coordinated briefing schedule. If the Court concludes that the Florida court's treatment of common issues would materially assist its own analysis, the Nonparties also support deferring any decision until after that ruling. Either schedule is preferable to an immediate *ex-parte* authorization of UEFA's broad subpoenas here.

## VI. CONCLUSION

For the reasons set forth above, Mr. Maffei and BANN respectfully request that the Court enter an order:

1. Granting FIFA U.S.'s Motion to Intervene, ECF No. 15;

2. Deferring any ruling on UEFA's Application in this District until the application pending in Florida has been fully briefed and resolved by the court in the Southern District of Florida;

3. If the outcome of the Florida application is not dispositive of the Application in this District, to set a briefing schedule for FIFA U.S. and the Nonparties;

4. Permitting the Nonparties to file their opposition to UEFA's Application by September 30, 2026, or later as the Court deems reasonable and appropriate.

Respectfully submitted,

*s/ Kristen Frost*
Kristen Frost
Theodore O'Brien
TAFT STETTINIUS & HOLLISTER LLP
675 Fifteenth Street, Suite 2300
Denver, Colorado 80202
Telephone: (303) 297-2900
Facsimile: (303) 299-0940
E-mail: KFrost@taftlaw.com
TObrien@taftlaw.com
*Attorney for Gregory B. Maffei and BANN Ventures, Inc.*

**CERTIFICATE RE: USE OF GENERATIVE ARTIFICIAL INTELLIGANCE (AI) FOR DRAFTING**

I hereby certify that no portion of this Nonparties Gregory B. Maffei And Bann Ventures' Non-Opposition To Motion To Intervene And Motion To Defer Ruling And For A Coordinated Briefing Schedule was drafted by generative artificial intelligence.

*s/ Kristen Frost*
Kristen Frost

**CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of September, 2026, I served a true and correct copy of the foregoing **NONPARTIES GREGORY B. MAFFEI AND BANN VENTURES' NON-OPPOSITION TO MOTION TO INTERVENE AND MOTION TO DEFER RULING AND FOR A COORDINATED BRIEFING SCHEDULE** electronically with the clerk of the court via the CM/ECF system to all interested parties.

*s/ Kristin McKinley*
Kristin McKinley, Legal Assistant